**SO ORDERED.**

**SIGNED this 22 day of August, 2013.**

_____
Stephani W. Humrickhouse
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| THE CAPITAL CENTRE, LLC, | CASE NO. |
| DEBTOR | 12-06277-8-SWH |

## ORDER

This matter came before the court on the confirmation of the chapter 11 plan, the debtor's objection to claims of Allen Kelly & Company ("Allen Kelly") and Time Payment Corporation ("Time Payment"), and the debtor's objection to ballots and motion to strike. A hearing was held on June 11, 2013, in Raleigh, North Carolina.

At the hearing, the court and parties agreed that in order to reach the issues presented by the cramdown provisions of 11 U.S.C. § 1129(b), the court needs first to find that there is an accepting impaired class. The debtor's position is that there are in fact two accepting impaired classes, Class 2 and Class 5. Stabilis Fund II, LLC ("Stabilis") disputes that either class constitutes a proper accepting impaired class, arguing that Class 2 is not impaired and that Class 5 is not accepting. The court conducted a full confirmation hearing, after which it took confirmation and the other motions before it under advisement, requesting that the parties submit additional briefing on the question of whether Wake County Department of Revenue's ("Wake County") acceptance of the Class 2

treatment was acceptance by an impaired class. The debtor and Stabilis submitted memoranda on the issue on June 21, 2013.

## BACKGROUND

The debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code on August 31, 2012. The debtor owns a single commercial building located at 3629 Capital Blvd., Raleigh, North Carolina (the "property").  The property is subject to two deeds of trust for the benefit of BB&T which were assigned to Stabilis.

### 1. Debtor's chapter 11 plan and modification.

On November 29, 2012, the debtor filed its chapter 11 plan and disclosure statement. The proposed plan provided for the following classes:

| | |
|---|---|
| Class 1 - | Allowed Administrative Expense Claims |
| Class 2 - | Allowed Priority and Secured Tax Claims |
| Class 3 - | Allowed Secured Claim of Branch Banking & Trust or Successor, Reflected in Loan No. 9512289530-00001 |
| Class 4 - | Allowed Unsecured Claim of Branch Banking & Trust or Successor, Reflected in Loan No. 9512289530-00002 |
| Class 5 - | Allowed General Unsecured Claims |
| Class 6 - | Allowed Equity Interests |

The plan originally classified all general unsecured claims together in Class 5.  Class 5 claims were to be paid, pro rata, in quarterly installments of $700.00 until the Class 5 claimants had been fully paid.  Interest would accrue at the federal judgment rate in effect upon the effective date of the plan.

Ballots for the plan were due by January 24, 2013.  The debtor received accepting ballots from Wake County, McClanahan Law Firm, PLLC ("McClanahan"), and Yudichak CPA PC ("Yudichak" or "CPA").  Wake County's claim is treated in Class 2.  McClanahan and Yudichak are unsecured claimants treated in Class 5, with claims in the amounts of $292.65 and $375.00, respectively.

2

The debtor received four rejecting ballots from Stabilis. Stabilis voted to reject the treatment given to Class 3 and Class 4, which correspond to the two BB&T notes now held by Stabilis. Stabilis also filed two rejecting ballots corresponding to the claims it purchased from Class 5 claimants. The purchased claims were those of Allen Kelly in the amount of $1,732.00 and Time Payment in the amount of $33,117.92.[1]

Subsequent to receiving the ballots, on January 25, 2013, the debtor modified the plan and supplemented the disclosure statement. The modification separated out the purchased claims of Allen Kelly and Time Payment into a Class 4A,[2] and left the remaining unpurchased general unsecured claims in Class 5. The debtor supplemented its disclosures, stating that the modification to the plan was appropriate because the purchase by Stabilis of claims in an effort to gain control of the debtor's property and prevent confirmation put Stabilis at odds with the interests of the debtor and the debtor's remaining creditors. Based on this new classification scheme, Class 5 became an accepting class.

---

[1] These amounts were the amounts listed in the debtor's original schedules.

[2] The specific language of class 4A is:

8.1A  Description of Class. Class 4A is comprised of all Allowed Unsecured Claims purchased by or assigned to Stabilis Fund II, LLC, or any related entity.

8.2A  Treatment of Claims. Class 4A's Allowed Claim shall be secured by a junior deed of trust on the Debtor's real property and amortized over ten (10) years, or such amortization as the Court finds necessary for confirmation, at the Secured Rate, and the Debtor shall make monthly payments according to such amortization. To be entitled to receive payments, Class 4A shall be required to send monthly statements to the Debtor showing the payments due and the application of previous payments. Payments under this Plan to Class 4A shall be made on the first day of the month, with the first such payment to be made on the first day of the month following the Effective Date.

On February 4, 2013, the debtor amended its schedules, removing Allen Kelly and Time Payment as unsecured creditors. According to the debtor, investigation revealed that neither Allen Kelly nor Time Payment had a valid, prepetition debt. On February 5, 2013, the debtor filed an objection and motion to strike the ballots cast by Stabilis on its purchased claims and on March 5, 2013, the debtor filed an objection to the claims of Allen Kelly and Time Payment. On June 10, 2013, Stabilis filed a memorandum in support of its objection to confirmation taking issue with the separation of the purchased claims from the general unsecured claims.

    2.    **The Allen Kelly and Time Payment debts**.

Upon filing its bankruptcy petition on August 31, 2012, the debtor listed Allen Kelly and Time Payment on its schedule F and summary of schedules. The deadline for filing proofs of claim in the case was December 31, 2012. Neither Allen nor Time Payment filed a proof of claim. On January 24, 2013, Stabilis filed two notices of transfer of claims with the court evidencing the assignments of the Allen Kelly and Time Payment claims to it.

At the hearing, Donna Roberts, the bookkeeper for the debtor, testified that the Time Payment debt arose from its financing of a sign on the property. The billing statement came to Scott Roberts and one of the tenants, Capital Custom Wheels LLC, not to the debtor. Ms. Roberts further testified that the debtor did not owe Time Payment on the debt.

Ms. Roberts testified that the Allen Kelly claim arose from a maintenance agreement between the debtor and Allen Kelly for the servicing of the HVAC units. At the time of filing, there was a balance on the account. The agreement has since been cancelled and the debt paid postpetition.

4

At some point, according to Ms. Roberts, the debtor realized that the Allen Kelly debt had been fully paid and that the Time Payment debt was not a debt of the debtor. After coming to these realizations, the debtor amended its schedules to remove the debts to these creditors.

### 3. The separate classification of the purchased claims.

Ms. Roberts also testified regarding the treatment of the unsecured creditors in the plan. She stated that the rationale behind the original treatment given to the Class 5 creditors was that the debtor wanted to pay the trade creditors quickly. She felt that it was fair to treat those creditors differently than a large secured creditor, as the secured creditor has the financial ability to be paid over a longer period of time. Ms. Roberts stated that once Stabilis bought two of the unsecured claims, the motivation to pay those claims on an accelerated schedule no longer existed. At that point, the debtor amended its plan to classify the purchased claims in a separate class, Class 4A. There are three claims remaining in Class 5: the claims of Yudichak, McClanahan, and a real estate agent, Peter Pessetto, KW Commercial ("Pessetto"). On cross-examination, Ms. Roberts opined that, although debtor may use the services of Yudichak and McClanahan in the future, it would not be working with Pessetto again since the debtor had recently employed a different real estate agent.

### 4. The Class 2 Claim of Wake County.

On September 17, 2012, Wake County filed a proof of claim in the amount of $12,699.26 for 2012 ad valorem taxes. At the time of the debtor's filing, on August 31, 2012, the ad valorem tax claim of Wake County was an unsecured priority claim. However, by operation of state law, on January 1, 2013, the taxes became a pre-petition secured claim. See Cnty of Lenoir v. Moore, 441 S.E.2d 589, 591 (N.C. App. 1994); N. C. Gen. Stat. § 105-355(a); N.C. Gen. Stat. § 105-285(d).

In its plan, the debtor provides treatment for Wake County's claim in Class 2: Allowed Priority and Secured Tax Claims. The proposed treatment for the class is that

> Class 2 claims shall be paid in full with interest at the rate set by Internal Revenue Code sections 6601 and 6621 in equal monthly payments, so that the last payment shall be due within five years of the filing date. The first such payment shall be due on the first day of the month following the Effective Date.

The plan states that Class 2 claims are impaired. Wake County voted to accept the Class 2 treatment. No other ballots were cast regarding Class 2 claims.

At the confirmation hearing, the debtor argued that Class 2 constitutes an accepting impaired class. Stabilis takes the position that the class is not impaired and therefore cannot be counted as an impaired class sufficient to satisfy §1129(a)(10) and provide the debtor with access to cramdown.

## DISCUSSION

There are several threshold issues to address in conjunction with confirmation relating to whether the debtor has an accepting impaired class as is required for cramdown of the plan.[3] There are two classes that the debtor contends are accepting and impaired: Class 2 and Class 5. Stabilis argues that Class 5 is not an accepting class because the separate classification of the Class 4A claims is improper. The debtor argues that the Class 4A separation is appropriate. Additionally, the debtor challenges the validity of the class 4A claims. The court will first evaluate whether the Class 4A claims are valid and whether separate classification of the Class 4A claims is proper.[4] The court will then turn to the question of whether Class 2 is an impaired accepting class.

**A.    Validity of the claims purchased by Stabilis**.

---

[3] Cramdown pursuant to § 1129(b) is necessary for confirmation in light of the rejection of the plan by Classes 3 and 4. See 11 U.S.C. § 1129(a)(8).

[4] Resolution of this classification issue will necessarily resolve the debtor's motion to strike and objection to the Stabilis' ballots and the debtor's objection to claims.

In accordance with its oral ruling during the hearing, the court finds that the debtor proved that it has no legal obligation to pay the Time Payment debt. However, the evidence is clear that a debt was owed to Allen Kelly on the petition date. Therefore, debtor's motion to strike the ballot and objection to the claim of Time Payment is allowed; the debtor's motion to strike the ballot and objection to the claim of Allen Kelly is denied. As a result, Class 4A consists only of the claim of Allen Kelly.

      **B.**      **Separate classification of the claim purchased by a secured creditor**.

Section 1129 of the Code sets out the requirements for confirmation of a chapter 11 plan. Pursuant to this section, for a plan to be confirmed the plan and the plan's proponent must comply with "the applicable provisions of this title." 11 U.S.C. § 1129(a)(1)-(2). The "applicable provisions" include section 1122 of the Code, which governs the classification of claims within a plan. Section 1122 provides:

> (a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.
>
> (b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

The language of § 1122(a) requires only that claims in a class must be substantially similar, not that all substantially similar claims be in the same class. This provides some flexibility in the classification of claims. However, the Fourth Circuit, in <u>Travelers Insurance Co. v. Bryson Properties, XVIII (In re Bryson Properties, XVIII)</u>, made it clear that if the only reason for a separate classification is to manipulate the vote, the classification cannot stand. 961 F.2d 496, 502

(4th Cir. 1992); see also In re Somerset Props. SPE, LLC, 2012 WL 3644737, at *2 (Bankr. E.D.N.C. Aug. 23, 2012) ("[I]t is well-established that separate classification may not be created with the sole intent to achieve cram-down..."). Bryson makes clear that while the debtor has flexibility in classification of claims, it is limited from "gerrymandering" if the sole motivation is to obtain an impaired accepting class. 961 F.2d 496.

While this limitation has been placed on debtors, a debtor may still separately classify similar claims as long as there is a "legitimate purpose" other than to manipulate class voting. Id.; see Somerset, 2012 WL 3644737, at *4 ("[I]f a plan proponent can articulate legitimate differences among otherwise substantially similar claims... then separate classification may be proper.") (citing In re Simon, 2008 WL 2953471, at *2 (Bankr. E.D.Va. July 28, 2008)); In re Orchards Vill. Invs, 2010 WL 123706, at *7 (Bankr. D. Or. 2010) ("Similar claims generally are placed in the same class unless there are legitimate business or other reasons for separate classification.").

In the instant case, the debtor sets forth two purposes, it views as legitimate, for separately classifying Class 4A creditors from Class 5 creditors. First, the debtor argues an ongoing business relationship with the creditors remaining in Class 5. Class 5 currently consists of three creditors and while it is true that separate classification of creditors with whom the debtor intends to continue to do business is a legitimate business purpose, that is not the case at hand. In re Snyders Drug Stores, Inc., 307 B.R. 889, 893-94 (Bankr. S.D. Ohio 2004); see also In re Burcam Capital II, LLC, 2013 WL 593709 (Bankr. E.D.N.C. Feb. 15, 2013). The debtor's witness, Ms. Roberts, testified that the debtor had no intention of dealing with the largest of the three creditors left in Class 5, Pessetto.

The debtor's second argument to support separate classification is that the two classes of unsecured creditors have different and contradictory interests. Here, the creditors at issue are split

between trade creditors and an institutional lender that has purchased one of the general unsecured claims. Addressing a similar argument in Sea Trail, 2012 WL 5247175 (Bankr. E.D.N.C. Oct. 23, 2012), the court determined that the debtor's separate classification of unsecured trade creditors from unsecured claims arising from loans made by the debtor's shareholders was appropriate as the classification scheme "enable[d] the debtor to satisfy, or at least attempt to satisfy, the different interests at play by providing each class with distinct treatment that is intended to be suitable for the needs and expectations of the creditors within their respective class." Id. at *7. In Sea Trail, the testimony was that shareholders were primarily interested in retaining assets for a longer duration in an effort to maximize their recovery whereas unsecured trade creditors preferred that assets be liquidated expeditiously to achieve a swift recovery of their claims. Id. at *3. The amount of claims in the general unsecured class totaled $711,861.37. Id. at *2. The total amount in the class containing the shareholder's unsecured claims was $4,764,580.41. Id. The disparate treatment of the two classes reflected the classes' stated interests: the general unsecured class was to receive the proceeds from the sale of property, as well as any proceeds from avoidance actions, until each claim holder had recovered 50% of its claim. Id. Upon each general unsecured claim holder receiving 50% of its claim, the remaining net proceeds from the sale of property and avoidance actions would be spilt between the general unsecured class and the class housing the unsecured claims of the shareholders. Id. In addition, the shareholder class would receive title to a tract of land and an assignment of a sewer service agreement. Id. The tract of land was thought to require a longer marketing period than the property to be liquidated in favor of the general unsecured class but would have a greater potential to increase in value over the long term. Id. at *3. This court found that "there [were] certainly legitimate differences between the two classes of claimholders which

9

[justified] separate classification." Id. at *7. Placing these two types of claims in the same class with the liquidation of a real estate asset as its treatment would put their respective goals at odds with one another.

Here, the Class 5 general unsecured creditors will receive quarterly payments of $700 to be split pro rata until such claimants have been paid 100% of their claims, with interest accruing at the federal judgment rate. The Class 4A purchased claim will be secured by a junior deed of trust on the debtor's real property, and receive monthly payments based on a ten-year amortization at the secured rate.

Unlike in Sea Trail, Class 4A contains a relatively small claim, the claim of Allen Kelly scheduled at $1,732. This claim was purchased, whereas the claims in Sea Trail were those of shareholders who had extended loans to the debtor. Although Stabilis may expect that the debtor may not **want** to give its purchased claim quick payment, the debtor would not be recognizing the particular interests of Stabilis, as opposed to those of the general unsecured creditors, by delaying payment to Stabilis with a ten-year payment plan. Since the treatments under the two proposed classes has not been fashioned to recognize the particular, distinctive interests of their members, the court is left to conclude that the purpose of such separate classification is vote manipulation.

The debtor has failed to offer any "legitimate purpose" for separate classification of the unsecured claims. Therefore, the separation of the purchased claims into Class 4A is improper. When the rejecting Allen Kelly vote is considered in Class 5, that class becomes a rejecting class.

**C.     Impairment of the Wake County's Secured Tax Claim.**

In order for Class 2, containing the secured tax claim of Wake County, to qualify as a class for voting purposes it must meet two criteria. First, it must contain a claim that can be classified pursuant to 11 U.S.C. § 1123(a)(1). Second, the claim must be "impaired" as defined by 11 U.S.C. § 1124.

Section 1123(a)(1) requires that a plan shall "designate... classes of claims, other than claims of a kind specified... in 507(a)(8) of this title." Section 507(a)(8) claims are allowed unsecured priority tax claims of governmental units. There is a split of authority on whether or not this language prohibits or merely does not require classification of certain claims. 7 Collier on Bankruptcy ¶ 1123.01[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. (citing the ambiguity in the statutory language and legislative history surrounding whether "section 1123(a)(1) prohibits the classification of section 507(a)(2), (a) (3) and (a)(8) claims or merely makes such classification permissive." ). The court however, need not here decide whether or not a secured tax claim qualifies as a "class" for voting purposes because the current Class 2 treatment is unimpaired.

The court in In re Swartville, LLC, 11-08676-8, 2012 WL 3564171, *2 (Bankr. E.D.N.C. Aug. 17, 2012) laid out the standard for the determination of valid impairment of a class of claims.

> A claim is unimpaired if the plan 'leaves unaltered the legal, equitable, and contractual rights to which such a claim or interest entitles the holder of such claim or interest' or if the plan compensates the creditor for a past default. 11 U.S.C. § 1124. Many courts have noted that 'Congress define[d] impairment in the broadest possible terms.' Matter of Madison Hotel Associates, 749 F.2d 410, 418 (7th Cir. 1984) (quoting In re Taddeo, 685 F.2d 24, 28 (2nd Cir. 1982); see also L & J Anaheim Assoc. v. Kawasaki Leasing Int'l Inc., 995 F.2d 940, 942 (9th Cir. 1993) (finding the broad nature of the language of 1124 to be "well-established"); 7 Collier on Bankruptcy ¶ 1124.03, at 1124-7 (Alan N. Resnick & Henry J. Sommer Eds., 16th Ed.) (stating that 'any alteration of [the creditor's] rights

constitutes impairment even if the value of the rights is enhanced').

Further, when the Code alters the legal, equitable, or contractual rights of a creditor and not the plan, such alterations have been interpreted as a "non-impairment" pursuant to § 1124. In re American Solar King Corp., 90 B.R. 808 (Bankr. W.D. Tex. 1988). The court in In re American Solar King Corp, reasoned that

> [i]mpairment results from what the *plan* does, not what the statute does. A plan which "leaves unaltered" the legal rights of a claimant is one which, by definition, does not impair the creditor. A plan which leaves a claimant subject to other applicable provisions of the Bankruptcy Code does no more to alter a claimant's legal rights than does a plan which leaves a claimant vulnerable to a given state's usury laws or to federal environmental laws. The Bankruptcy Code itself is a statute which, like other statutes, helps to define the legal rights of persons, just as surely as it limits contractual rights. Any alteration of legal rights is a consequence not of the plan but of the bankruptcy filing itself.

Id. at 819-20 (internal citations omitted).

Here, Class 2 consists of a secured tax claim held by Wake County for 2012 property taxes. Secured tax claims, such as this one, are granted preferential treatment by the Code under 11 U.S.C. § 1129(a)(9)(D). The debtor's treatment of Class 2 complies with, and is identical to, that given to secured tax claims by §1129(a)(9)(D).

The debtor focuses on two cases, In re Greenwood Point and In re Full Circle Holdings, for the proposition that the secured tax claim in Class 2 is impaired. See In re Greenwood Point, LP, 445 B.R. 885 (Bankr. S.D. Ind. 2011); In re Full Circle Holdings, LLC, 13-00066-8-JRL (Bankr. E.D.N.C. May 21, 2013). The court does not disagree that the secured tax claims in In re Greenwood Point and In re Full Circle Holdings were impaired, but finds that the treatments creating the impairment in those cases distinguish them from those present in the debtor's plan.

12

The court in In re Greenwood Point, in dicta, found that the secured tax claim owned by Marion County Treasurer was impaired. 445 B.R. 885 (Bankr. S.D. Ind. 2011). In that case the lien securing Marion County Treasurer's claim was released by the plan prior to complete satisfaction of the claim. In interpreting § 1129(a)(9)(D), the court reasoned that,

> that section speaks only to the timing and amount of payments in its treatment of allowed secured tax claims and does not address treatment of the *lien*. Here, the Plan proposes that the real estate will vest in the reorganized debtor free and clear of liens, including the lien of the Marion County Treasurer. The proposed loss of the Marion County Treasurer's valid lien rights prior to payment in full of its claim under the Plan is additional, and significant, impairment under Section 1124.

Id. at 907. Here, in contrast to In re Greenwood Point, the debtor's plan retains Wake County's lien until all of the payments have been made, leaving the claim unimpaired by the plan.

The debtor also cites In re Full Circle Holdings, 13-00066-8-JRL, (Bankr. E.D.N.C. May 21, 2013). There the court concluded, from the bench, that "although barely, there is an impaired class, that has accepted the plan... a secured tax claim is not prohibited from being used as a class by 1123." (Online recording at 1:11:38). While the court did not elaborate on its determination of why the secured tax claim was impaired in that case, the class did not receive § 1129(a)(9)(D) treatment. The debtor provided the payoff of the entire secured tax claim within one year of the effective date as opposed to the proscribed years given by § 1129(a)(9)(D). By changing the payment schedule of the claim the debtor altered the claimant's rights. "[A]ny alteration of [the creditor's] rights constitutes impairment, even if the value of the rights is enhanced." Swartville, 2012 WL 3564171 at *2 (citing 7 *Collier on Bankruptcy* ¶ 1124.03, at 1124-27 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)).

Here, the debtor's plan provides for a payment to Wake County in accordance with the exact treatment found in § 1129(a)(9)(D). The legal rights of the taxing authority are not altered in any way. Accordingly, the Class 2 secured tax claim is unimpaired and cannot constitute an accepting class.

## CONCLUSION

For the reasons set forth above, the court concludes that the debtor has improperly classified the Class 4A claim and it should be included in Class 5. Additionally, the court concludes that the plan does not impair the Class 2 secured tax claim of Wake County. As a result, there are no accepting impaired classes enabling the debtor to proceed to cramdown. Confirmation is **DENIED**. The debtor shall have twenty days to file an amended plan.

**SO ORDERED**.

**END OF DOCUMENT**